## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Criminal Action No. 2016-0021** |
| **v.** ) | |
| ) | |
| **JOANNE BENJAMIN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
**Melissa P. Ortiz, Esq.,**
St. Croix, U.S.V.I.
**Meredith Jean Edwards, Esq.,**
St. Thomas, U.S.V.I.
        *For the United States*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Joanne Benjamin*

**Edward L. Barry, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Sylvia P. Benjamin*

**Jeffrey B.C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Lynell Hughes*

**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Thema Liverpool*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Jacinta A. Gussie*

**Edgar L. Sanchez-Mercado, Esq.,**
San Juan, Puerto Rico
        *For Defendant Indica Greenidge*

**Mark L. Milligan, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Nisha Brathwaite*

**Carl A. Beckstedt, III, Esq.,**
**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Darleen Thompson*

**John K. Dema, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Nicolette Alexander*

**Anthony R. Kiture, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Sheba Rashida Young*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the following Motions:

- Defendant Joanne Benjamin's ("J. Benjamin") "Emergency Motion to Dismiss Original and Superseding Indictments and to Stay All Proceedings" (Dkt. No. 491) ("Emergency Motion to Dismiss");[1] the Government's Opposition (Dkt. No. 547); and Defendants J. Benjamin and Jacinta Gussie's ("Gussie") Joint Reply to the Government's Opposition (Dkt. No. 581);

- Nicolette Alexander's ("Alexander") "Supplemental Motion For Joinder to Joanne Benjamin's Emergency Motion To Dismiss" (Dkt. No. 517) ("Supplemental Motion");[2] the Government's Opposition (Dkt. No. 549); Alexander's Reply (Dkt. No.

---

[1] Defendant J. Benjamin's Emergency Motion to Dismiss was joined by Defendants Jacinta Gussie ("Gussie") (Dkt. No. 492); Nicolette Alexander (Dkt. No. 494); Sylvia Benjamin ("S. Benjamin") (Dkt. No. 498); Nisha Brathwaite ("Brathwaite") (Dkt. No. 508); Sheba Rashida Young ("Young") (Dkt. No. 510); Lynell Hughes ("Hughes") (Dkt. No. 514); and Darleen Thompson ("Thompson") (Dkt. No. 515).

[2] Defendant Alexander's Supplemental Motion was joined by Defendants Thema Liverpool ("Liverpool") (Dkt. No. 524); Gussie (Dkt. No. 528); Brathwaite (Dkt. No. 591); and Thompson (Dkt. No. 604). Alexander's "Motion to Dismiss Superseding Indictment due to Pre-Indictment Delay and Spoliation of Evidence," which was incorporated in the same filing as the Supplemental Motion, was denied by the Court's Memorandum Opinion and Order entered on July 17, 2019. (Dkt. Nos. 716-717).

567), which was joined by Defendant J. Benjamin (Dkt. No. 585); Alexander's Supplemental Brief (Dkt. No. 647);[3] and the Government's Reply thereto (Dkt. No. 660);[4] and

- Alexander's "Motion to Compel Government's Production of *Brady* Material and Supplemental Motion for Joinder to Joanne Benjamin's Emergency Motion for Discovery of Grand Jury Material" ("Motion to Compel") (Dkt. No. 518);[5] the Government's Opposition (Dkt. No. 550); and Alexander's Reply (Dkt. No. 568).[6]

For the purposes of this omnibus opinion, the Court will treat Defendants J. Benjamin's and Alexander's Motions to Dismiss the Original and Superseding Indictments collectively ("Motions to Dismiss") and will deny them for the reasons discussed below. Further, the Court will also deny Alexander's Motion to Compel, as well as Defendant J. Benjamin's request for discovery of grand jury materials.

## I. BACKGROUND

### A.   Factual Background

#### 1.      The Alleged Tax Fraud Scheme

On September 15, 2016, the Government filed a 119-count Indictment against J. Benjamin, Alexander and eight Co-Defendants charging them with Conspiracy to Defraud the United States

---

[3] Alexander's Supplemental Brief was joined by Defendants Gussie (Dkt. No. 649); Young (Dkt. No. 650); S. Benjamin (Dkt. No. 651); J. Benjamin (Dkt. No. 652); Thompson (Dkt. No. 654); and Brathwaite (Dkt. No. 655).

[4] Because Alexander's Supplemental Brief (Dkt. No. 647) most comprehensively covers the central issue here, i.e., Defendants' request for a dismissal of the Indictment due to an alleged error in the Grand Jury proceedings, the Court treats it—and the Government's Reply thereto (Dkt. No. 660)—as the principal filings for purposes of the Court's rulings herein. The Court will refer to Defendants' other filings when they raise issues not covered in Alexander's Supplemental Brief.

[5] Alexander's Motion to Compel was joined by Defendants J. Benjamin (Dkt. No. 526); Gussie (Dkt. No. 529); and Brathwaite (Dkt. No. 592). Although Alexander referred to J. Benjamin's Emergency Motion for Discovery of Grand Jury Material, J. Benjamin's request for grand jury materials was actually incorporated in her Emergency Motion to Dismiss. (Dkt. No. 491 at 7).

[6] Alexander's Reply was joined by Defendant Brathwaite (Dkt. No. 594).

in violation of 18 U.S.C. § 286, and Theft of Government Property in violation of 18 U.S.C. § 641 ("Original Indictment").[7] Nine of the ten Defendants—including J. Benjamin and Alexander— were also charged with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. No. 1). The Government filed a Superseding Indictment on October 5, 2018 ("Superseding Indictment"). (Dkt. No. 477).

According to the Affidavit of Special Agent Stephen E. Wagner ("Agent Wagner") of the United States Treasury Department, Internal Revenue Service ("IRS") Criminal Investigation, which was submitted in support of the Complaint, this case arises from an investigation conducted by the IRS into Defendants' roles in the alleged filing of fraudulent income tax returns with the United States and their alleged receipt of stolen funds as a result of those filings. (Criminal Action No. 16-mj-00024, Dkt. No. 1-1 at ¶ 4). Agent Wagner stated that on or about July 12, 2012, a Source of Information reported that "a group of individuals were involved in a scheme to file false tax returns with the IRS using stolen identities." *Id*. at ¶ 5. Some of these individuals were identified as participants in the scheme through the refunds that were deposited into their bank accounts. *Id*. at ¶ 6.

The Superseding Indictment describes the alleged mechanics of the scheme. All Defendants were known to each other as friends or associates and all resided in the U.S. Virgin Islands. (Dkt. No. 477 at 1). The scheme allegedly involved: (1) the acquisition of Personal Identifying Information ("PII") of individuals (i.e. name, social security number and date of birth); (2) the acquisition of bank accounts and prepaid debit card numbers for the deposit of falsely

---

[7] The Government commenced this action by filing a Criminal Complaint on July 22, 2016. (Criminal Action No. 16-mj-00024, Dkt. No. 1). The Original Indictment was initially filed under seal (Dkt. No. 1), and was unsealed upon the Government's motion on September 27, 2016 (Dkt. No. 25).

claimed refunds; (3) the filing of tax returns with a designation of refunds to the acquired bank accounts or debit cards; and (4) the withdrawal of illegal refund deposits. *Id*. at 3. Each Defendant allegedly participated in one or more of these phases. *Id*. It is alleged that, in furtherance of the scheme, Defendants acquired PII for numerous individuals—some without the individuals' knowledge or consent; caused tax returns from 2010 and 2011 to be electronically filed with the IRS using the other individuals' personal information; falsified information on the tax returns concerning the income earned, tax withholding amount, credits, address, employer, occupation, and other information; and used the same information on multiple tax returns. *Id*. at 4. Defendants then allegedly designated bank accounts or prepaid debit cards for receipt of the refunds. *Id*. Once the refunds were deposited, Defendants allegedly withdrew that amount and spent it using debit cards, or transferred it to other accounts for personal use. *Id*. As a result of the scheme, Defendants allegedly received hundreds of thousands of dollars in illegal tax refunds. *Id*.

### 2. The Alleged Grand Jury Defect

The following facts are derived from the representations on behalf of the Government in the Declaration of Assistant United States Attorney ("AUSA") Alphonso G. Andrews (Dkt. No. 635), and the Court's *in camera* review of relevant grand jury materials.[8]

---

[8] "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (citing *United States v. Procter & Gamble*, 356 U.S. 677, 682 (1957)). However, due to the irregularity alleged under the circumstances here, the Court concluded that it was necessary to review relevant grand jury materials to ascertain the facts pertinent to the Court's resolution of the issues presented, and to disclose certain grand jury information for purposes of this opinion. *See United States v. Rose*, 215 F.2d 617, 629 (3d Cir. 1954) (grand jury testimony and records are ordinarily confidential, "'[b]ut after the grand jury's functions have ended, disclosure is wholly proper where the ends of justice require it'") (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940)); *see also United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (finding no abuse of discretion in district court's examination of transcripts of grand jury proceedings *in camera* in evaluating defendants' motion to dismiss).

The first Grand Jury to examine this matter, which was composed of 19 members, returned the Original Indictment in September 2016. Sometime between January 2017 and July 2017, the Government allegedly became aware that one of those 19 jurors was an alleged victim of the tax fraud scheme charged in the Original Indictment. The juror's full name was listed in the Original Indictment as a victim of Defendant Thema Liverpool ("Liverpool"). Further, one exhibit that the Government presented during the Grand Jury proceedings contained the name of the alleged victim. In addition, the alleged victim was interviewed by Agent Wagner—who was a witness for the Government during the Grand Jury proceedings—approximately eight months earlier. The record shows that at the beginning of the Grand Jury proceedings, the Government identified Defendant Liverpool, along with the other Defendants, as being involved in the case and asked the jurors whether they were related to or knew any of those individuals.[9] The record reflects that there was no positive response. The record further shows that the alleged victim participated in the Grand Jury's deliberations regarding the instant matter. The Court's review of the Grand Jury materials revealed that all 19 jurors concurred in the vote for a True Bill.

According to the Government, its discovery of the alleged victim's inclusion in the Grand Jury—which occurred several months after the Original Indictment was issued—resulted in protracted "interoffice and interdepartmental discussions regarding how to address the matter," as the Government "weighed considerations of grand jury secrecy versus disclosure obligations." (Dkt. No. 635-1 at 1). In late September 2018, the Government, "out of an abundance of caution," decided to file a Superseding Indictment that was returned by a newly constituted Grand Jury. (*Id.*;

_____

[9] Specifically, the Government read aloud the names of each Defendant, including explaining that Thema Liverpool is the daughter of Jacinta Gussie. The Government then asked the Grand Jury, "so anybody related by blood or marriage to any of these individuals? Or anybody that . . . you may know in this case that would direct a conflict with you?"

Dkt. No. 477). The Superseding Indictment did not alter the Original Indictment, except that the full names of victims were removed and replaced with their initials only, and minor alterations were added to the "to wit" clauses in certain counts. The Government also disclosed the grand juror issue to three Defendants who had already entered guilty pleas under the Original Indictment.[10] The Government informed these Defendants that it intended to file a Superseding Indictment, and requested that they execute waivers of any challenge to the Original Indictment to which they had pleaded guilty. The Government further informed these Defendants that if they chose not to waive, they would be included in the Superseding Indictment.

**B.     Procedural Background**

As noted above, on September 15, 2016, the Government filed an Indictment against Defendants. (Dkt. No. 1). On April 16, 2018, the Court entered a Scheduling Order which scheduled the trial in this matter for November 5, 2018. (Dkt. No. 378). This was followed by a Trial Management Order ("TMO") entered on October 6, 2018 (Dkt. No. 472), which scheduled a pretrial conference for October 25, 2018 and set other trial-related deadlines. *Id*. at 2. On October 5, 2018, the Government filed a Superseding Indictment (Dkt. No. 477) which was returned by a different Grand Jury than the Original Indictment. After presentation of the evidence, the new Grand Jury returned the same charges as in the Original Indictment.

On October 12, 2018, in the midst of the parties' pretrial deadlines, J. Benjamin filed an Emergency Motion to Dismiss (Dkt. No. 491), wherein her counsel reported learning the night

---

[10] In light of the pendency of Defendants' Motions to Dismiss, the Court—as requested—stayed approval of one Defendant's plea (Dkt. No. 535) and continued another Defendant's sentencing hearing pending resolution by the Court of the Motions to Dismiss (Dkt. No. 626). A third Defendant, who pleaded guilty under the Superseding Indictment (Dkt. No. 482), also requested a stay of the Court's approval of her plea, which the Court granted (Dkt. No. 627).

before that the Original Indictment was issued by a Grand Jury which included an alleged victim of the tax fraud scheme. Consequently, J. Benjamin requested that all proceedings in this action, including trial, be stayed pending resolution of her Emergency Motion to Dismiss, *id*. at 2, and that she be permitted access to discovery related to the Grand Jury proceedings from which the Original Indictment was issued. *Id*. at 7. On October 15, 2018, Alexander filed her own Motion to Dismiss (Dkt. No. 517).[11]

In response to Defendants' Motions to Dismiss, the Court entered an Order on October 15, 2018 (Dkt. No. 522) and scheduled a hearing to be held at the beginning of the October 25, 2018 pretrial conference to address the issues presented. *Id*. at 3.[12] At the hearing, the Court heard the parties' oral arguments on the Motions to Dismiss and Motion to Compel. Further, counsel for J. Benjamin, Alexander, Liverpool, and the Government requested an opportunity to submit supplemental briefs, which the Court allowed. (Dkt. No. 625). In addition, the Court ordered the Government to submit a declaration reciting the information it revealed during the hearing regarding the Government's discovery of the irregularity in the Grand Jury proceedings and its efforts to address that irregularity. *Id*. at 4-5. Due to the outstanding issues raised in the various

---

[11] Defendant Alexander's arguments in her initial Motion to Dismiss due to Pre-Indictment Delay and Spoliation of Evidence (Dkt. No. 347) were incorporated into her subsequent Motion to Dismiss the Superseding Indictment (Dkt. No. 517). The Court denied Alexander's Motion to Dismiss grounded in alleged pre-indictment delay and spoliation of evidence by Order entered on July 17, 2019. (Dkt. No. 716).

[12] The Court initially scheduled a hearing for October 22, 2018. (Dkt. No. 502). However, after a request from the Government for an extension of time to respond to the Motions to Dismiss (Dkt. No. 504), the Court continued the hearing to allow additional time for the Government to file its response and for Defendants to file their reply. (Dkt. No. 522).

motions filed by Defendants, and the requests for supplemental briefing, the Court continued the trial of this matter.[13]

In response to the Court's Order (Dkt. No. 625 at 5), on November 21, 2018, the Government submitted a Declaration from AUSA Alphonso G. Andrews confirming that one of the grand jurors was an alleged victim of one of the Defendants in this case. (Dkt. No. 635-1 at 1). On December 17, 2018, Alexander filed a Supplemental Brief in support of the Motion to Dismiss (Dkt. No. 647), and the Government filed its Amended Opposition thereto on January 23, 2019 (Dkt. No. 660).

By the conclusion of the briefing, Defendants had raised a myriad of issues. Because the Court found that the record then before it was not sufficient to decide the Motions to Dismiss, the Court issued an Order on March 22, 2019 directing the Government to file certain information and grand jury materials under seal for the Court's *in camera* review. (Dkt. No. 684).[14] Based on the information provided by the Government in its submission (Dkt. No. 686), the Court issued an Order directing the Clerk of Court to file under seal for the Court's *in camera* review the bioforms, attendance logs, and concurrence tally sheets for the Grand Jury proceedings that were held on April 12, 2016 and September 15, 2016. (Dkt. No. 687).

---

[13] J. Benjamin's request for a stay of all proceedings pending the Court's decision on her Emergency Motion to Dismiss was rendered moot because the Court vacated all pending deadlines and continued the trial. Because of this Memorandum and Opinion, the request for a stay will be denied as moot.

[14] The Court requested the following information: (1) the name and juror number of the alleged victim of the claimed tax fraud scheme who served as a grand juror; (2) the date(s) that any information about this matter was mentioned in any way to the Grand Jury; (3) the date(s) that the evidence regarding this matter was presented to the Grand Jury; (4) the date(s) that the Grand Jury deliberated and voted on this matter and issued a True Bill; and (5) the transcript of the Grand Jury proceedings for this matter—including whenever there was any mention of the matter—together with any exhibits presented.

## II. MOTIONS TO DISMISS

Defendants argue that dismissal of the Original Indictment with prejudice is warranted because it was invalid when it was issued by a grand jury whose members included an alleged victim of one of the crimes charged. (Dkt. Nos. 517 at 4-10; 647 at 5-7). The involvement of the tainted juror in the Grand Jury, according to Defendants, compromised their "right to a fair and impartial jury at all stages of [the] prosecution" in violation of their Due Process rights. (Dkt. No. 491 at 5-6). Based on Defendants' contention that the Original Indictment was void ab initio (Dkt. No. 517 at 5), Defendants further argue that the Superseding Indictment—which was filed outside the applicable statute of limitations—should also be dismissed because it cannot relate back to the void Original Indictment. Thus, Defendants conclude that all the charges are barred by the statute of limitations. (*Id*. at 4-6; Dkt. No. 647 at 13-15). Alternatively, Defendants request that the Court "suppress all evidence seized and retained by the Government" or "adopt appropriate jury instructions explaining the Government's actions and detailing the appropriate factual and evidentiary inferences the jurors should make as a result of the Government's actions." (Dkt. No. 517 at 2).

Defendants base their request for dismissal on two grounds. First, they seek dismissal under Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 12(b)(3)(A)(v) ("Rule 12(b)"). Alternatively, they seek dismissal under Fed.R.Crim.P. 6(b)(2) ("Rule 6(b)"). (Dkt. No. 491 at 5).

The Court concludes, and Defendants concede, that Rule 6(b) is not applicable in these circumstances. The challenge here is neither the type of objection to the grand jury contemplated by the Rule, nor an objection to the legal qualification of a grand juror as set forth in 28 U.S.C.

§ 1865. (Dkt. No. 581 at 2).[15] However, Rule 12(b) allows a defendant to move to dismiss an indictment based on an "error in the grand-jury proceeding or preliminary hearing." Fed.R.Crim.P. 12(b)(3)(A)(v); *United States v. Menendez*, 2015 WL 5703236, at *1 (D.N.J. Sept. 28, 2015). "By its terms, [the Rule] applies to both procedural and constitutional defects in the institution of prosecutions which do not affect the jurisdiction of the trial court." *Davis v. United States,* 411 U.S. 233, 236-37 (1973). In view of Defendants' challenge to an alleged error in the Grand Jury proceedings, their claims can be properly asserted under Rule 12(b).

As discussed below, the Court finds that Defendants have not established grounds for dismissal of the Original Indictment under Rule 12(b). The Court further finds that the Superseding Indictment relates back to the Original Indictment as the Original Indictment was validly pending when the Superseding Indictment was filed. Accordingly, the Court will deny Defendants' Motions to Dismiss grounded in these arguments.

---

[15] Under Rule 6(b)(2), a party may move to dismiss an indictment based on an objection to the grand jury or on an objection to an individual juror's lack of legal qualification. Objections to the grand jury under Rule 6(b)(2) must be grounded in a substantial failure to comply with the Jury Selection and Service Act ("JSSA"). Fed.R.Crim.P. 6(b)(2) (citing 28 U.S.C. § 1867(e)). In turn, a "substantial failure" to comply with the JSSA, which warrants dismissal of an indictment upon a defendant's motion, is a failure that threatens the right to be tried by a fair cross-section of one's community. *United States v. Caballero*, 286 F. Supp. 3d 242, 248 (D. Mass. 2017). This rule is "wholly unrelated" to an alleged bias of an individual juror in the grand jury. *Id.*

Objections to the legal qualification of jurors under Rule 6(b)(2) must be grounded in the ability of jurors to sit on the grand jury under 28 U.S.C. § 1865(b), which deems jurors qualified as long as they fulfill the age, citizenship, and residency requirements; possess a functional understanding of the English language; possess no mental or physical defect that would render them unable to perform satisfactory jury service; and have no previous or pending felony criminal convictions. 28 U.S.C. § 1865(b); *United States v. Calabrese*, 942 F.2d 218, 220 (3d Cir. 1991). Courts have held that no attack for bias will lie against the grand jury or jurors under this provision. *See, e.g., Estes v. United States,* 335 F.2d 609, 613 (5th Cir. 1964), *cert. denied,* 379 U.S. 964 (1965); *United States v. Lander,* 2009 WL 3230338, at *1 (N.D. Fla. Oct. 5, 2009); *In re Balistrieri*, 503 F. Supp. 1112, 1114 (E.D. Wis. 1980). Thus, because the objection to the juror here does not pertain to the qualification standards applicable under Rule 6(b)(2), that rule is not applicable in the instant matter—an issue which Defendants concede. (Dkt. No. 581 at 2).

## A. Errors in Grand Jury Proceedings

Defendants argue that the inclusion of one of the alleged victims in the Grand Jury that issued the Original Indictment was a constitutional "structural" error which automatically warrants dismissal of the Original Indictment with prejudice. (Dkt. Nos. 517 at 7-8; 647 at 6-8). The Court rejects this argument and finds instead that the error at issue is one subject to the "harmless error" inquiry. The Court further finds that the error can be remedied by less extreme measures than dismissal, including by means of a superseding indictment.

### 1. Applicable Legal Principles

The Fifth Amendment requires that an indictment be "returned by a legally constituted and unbiased grand jury." *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."). The Third Circuit and courts within the Third Circuit have recognized that the right to an unbiased grand jury exists under the Fifth Amendment. *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979); *see e.g., Schwartz v. U.S. Dep't of Justice*, 494 F. Supp. 1268, 1276 (E.D. Pa. 1980).

A defendant seeking to dismiss an indictment "bears a heavy burden." *United States v. Kubini*, 19 F. Supp. 3d 579, 615 (W.D. Pa. 2014). Because dismissal is a "drastic remedy," *United States v. Morrison,* 449 U.S. 361, 365 n.2 (1981), this "extreme sanction" should be "infrequently utilized." *United States v. Birdman,* 602 F.2d 547, 559 (3d Cir. 1979) (citation omitted); *United States v. Blatt*, 2007 WL 3287397, at * 2 (E.D. Pa. Nov. 5, 2007) ("Dismissal of an indictment is an 'extreme remedy' reserved only for the most egregious abuses of the criminal process." (citations omitted)).

The Supreme Court has identified two classes of cases in which indictments may be subject to dismissal as a result of errors in grand jury proceedings. The first class consists of cases in which the errors are subject to the harmless error inquiry. *United States v. Stevenson*, 832 F.3d 412, 427 (3d Cir. 2016) (unless the defect falls within the narrow structural error classification, "the Court has see[n] no reason not to apply [harmless error analysis] to errors, defects, irregularities or variances occurring before a grand jury." (internal citations omitted)). It is this class of cases to which the Supreme Court referred when it stated: "We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Prejudice to the defendant(s) must be shown to the degree that remedies other than dismissal would be impractical. *United States v. Soberon*, 929 F.2d 935, 940 (3d Cir. 1991) (discussing the Supreme Court's *Bank of Nova Scotia* standard requiring a showing of the impracticality of appropriate remedies other than dismissal). This class of cases encompasses "most constitutional errors." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).

In conducting the harmless error inquiry, a court must engage in a two-step analysis: "first, the nature of the error at issue must be determined; second, assuming a[n] [] error has occurred, the district court must consider whether that error prejudiced the defendant under the 'substantial influence' standard." *Blatt*, 2007 WL 3287397, at *3. Under that standard, "dismissal [] is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *United States v. Jennings*, 991 F.2d 725, 729 (11th Cir. 1993) (applying *Bank of Nova Scotia* standard in case where grand juror knew one of the alleged victims).

The second class of cases in which indictments may be subject to dismissal due to errors in the grand jury process involve structural defects "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257. In these cases, "the errors are deemed fundamental," and thus prejudice is presumed. *Id*. These cases have been described as "isolated exceptions" to the harmless error rule. *Id*. at 256 (citation omitted); *see United States v. Marcus*, 560 U.S. 258, 263 (2010) ("[S]tructural errors are 'a very limited class' of errors" and "it is often 'difficul[t]' to 'asses[s] the effect of the error.'" (citations omitted)); *Neder v. United States*, 527 U.S. 1, 8 (1999) (structural errors are found in a "very limited class of cases."). Such errors "defy analysis by 'harmless-error standards'" because of the "difficulty of assessing the effect of the error." *Gonzalez-Lopez*, 548 U.S. at 148 and n.4; *see also Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("the effect of the violation cannot be ascertained").

There is a limited body of cases in which errors in the grand jury context have been deemed to be structural errors warranting dismissal without any showing of prejudice. In those cases, the impracticability of other remedies has been integral to the decision to classify the error as structural. *See, e.g., Bank of Nova Scotia*, 487 U.S. at 257 ("In addition to involving an error of constitutional magnitude, other remedies were *impractical*, and it could be presumed that a discriminatorily selected grand jury would treat defendants unfairly." (emphasis added)); *United States v. Mechanik*, 475 U.S. 66, 70 n.1 (1986) ("It is also reasoned that racial discrimination in the selection of grand jurors is so pernicious, and other remedies so *impractical*, that the remedy of automatic reversal was necessary as a prophylactic means of deterring grand jury discrimination in the future." (emphasis added)); *Soberon,* 929 F.2d at 940 ("The requirement of prejudice is

excused only in extreme cases, where the 'structural protections of the grand jury' have been compromised and remedies other than dismissal would be *impractical*." (emphasis added)).

Consistent with the impracticability of other remedies concept embodied in both the structural and harmless error analyses, the Supreme Court has recognized that defects in criminal proceedings, including those implicating constitutional rights, do not necessarily warrant the ultimate remedy of dismissal of an indictment—let alone dismissal with prejudice—where remedies short of dismissal are available. *See Morrison*, 449 U.S. at 364 (assuming, without deciding, that the Government violated defendant's Sixth Amendment right to counsel, dismissal of the indictment was not warranted under the facts of the case); *United States v. Blue*, 384 U.S. 251, 255 (1966) (even if the Government deliberately violated defendant's Fifth Amendment right against self-incrimination, dismissal of the indictment was not an appropriate sanction). Rather, "remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Morrison*, 449 U.S. at 364.

Finally, another consideration that sometimes comes into play when addressing dismissal of grand jury indictments is 18 U.S.C. § 3288, which provides:

> Whenever an indictment or information charging a felony is dismissed *for any reason* after the period prescribed by the applicable statute of limitations has expired, *a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal* of the indictment or information, . . . which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

*Id.* (emphasis added). Section 3288, sometimes referred to as the "savings clause," applies when an indictment is dismissed because of defects in the indictment or other errors. *See, e.g., United*

*States v. Korey*, 614 F. Supp. 2d 573, 579 (W.D. Pa. 2009) (savings clause applies to the timely filing of a new indictment after dismissal of indictment or information).

### 2. Structural Error Analysis

Defendants argue that the Original Indictment was constitutionally invalid because it was issued by a biased Grand Jury, therefore violating Defendants' Fifth Amendment rights. (Dkt. No. 647 at 5). Defendant characterizes this defect—which resulted from the inclusion in the Grand Jury of an alleged victim of the claimed tax fraud scheme—as a "structural error" which "undermines the fairness of the entire criminal proceeding" and "defies analysis by harmless error review," thus necessitating dismissal of the Original Indictment with prejudice. *Id.* at 6. According to Defendants, "[t]he error is *per se* prejudicial and requires dismissal." *Id.*

The Government claims that Defendants have failed to even establish that an error occurred here, much less one that should be characterized as a "structural error." (Dkt. No. 660 at 13). According to the Government, Defendants have not definitively shown that "there was a biased person on the grand jury" because the sole fact that the juror was a victim is insufficient to establish bias. *Id.* Alternatively, the Government argues that because the circumstances here were limited to "a single juror" and that "a legally constituted unbiased [grand] jury returned a superseding indictment bearing the same charges" against Defendants, the error in the original Grand Jury is not one that conforms to the rare rubric of cases wherein the "structural" protections of the grand jury have been compromised so as "to render the proceedings fundamentally unfair." *Id.* at 15. The Government maintains that, in the final analysis, Defendants "will proceed to trial on an untainted superseding indictment." *Id.*

While the Court disagrees with the Government's assertion that the circumstances here presented no error in the Grand Jury proceedings, the Court nonetheless finds that the error is not structural error.

As it pertains to errors involving allegedly biased jurors in grand jury proceedings, the Supreme Court thus far has recognized only two instances of structural error—where a court may not "indulge a presumption of regularity [in the grand jury proceedings] nor evaluate the resulting harm." *Vasquez*, 474 U.S. at 263. Those two instances involve the arbitrary and systemic exclusion of jurors from the grand jury based on their race or gender.[16] Characteristic of structural errors, courts have "reversed the conviction and ordered the indictment quashed in such cases without inquiry into whether the defendant was prejudiced in fact by the discrimination at the grand jury stage." *Rose v. Mitchell*, 443 U.S. 545, 556 (1979) (racial discrimination in selection of a grand jury mandates that the indictment returned by such an "unconstitutionally constituted grand jury be quashed" and the conviction reversed even where the defendant has been found guilty beyond a reasonable doubt by a properly constituted petit jury following a trial that was free from constitutional error); *Patton v. Mississippi*, 332 U.S. 463, 469 (1947) ("When a jury selection plan, whatever it is, operates in such [a] way as always to result in the complete and long-continued exclusion of any representative at all from a large group of negroes, or any other racial group,

---

[16] Citing *United States v. Davila*, 569 U.S. 597 (2013), *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991), and *Stirone v. United States*, 361 U.S. 212, 218-19 (1960), Defendants note that the Supreme Court has found several other instances of "structural" error beyond the gender and race cases (Dkt. No. 647 at 8), including "denial of counsel of choice, denial of self-representation, denial of public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *Davila*, 569 U.S. at 611. It is true that the Supreme Court has found certain errors other than race and gender discrimination to be structural error in the trial context. This does not alter the fact, however, that, with regard to allegations of biased grand jurors, the Supreme Court has found only the two identified areas to constitute structural error. Moreover, as discussed herein, using the same analytical framework employed by the Supreme Court in both the trial and grand jury contexts, the error here does not constitute structural error.

indictments [] returned against them by juries thus selected cannot stand."); *see also Ramseur v. Beyer*, 983 F.2d 1215, 1225 (3d Cir. 1992) ("[A] determination of racial discrimination in the selection of grand jurors will support the quashing of a resulting indictment and reversal of the conviction.")

In describing the nature of the harm caused by these discriminatory exclusionary practices, the Supreme Court has noted that it "strikes at the fundamental values of our judicial system and our society as a whole." *Vazquez*, 474 U.S. at 262. The harm "is not only to the accused, indicted as he is by a jury from which a segment of the community has been excluded. It is to the society as a whole." *Rose*, 474 U.S. at 556. The harm this type of error inflicts is one which "has a potential impact *that is too subtle and too pervasive to admit of confinement to particular issues or particular cases.*" *Peters v. Kiff*, 407 U.S. 493, 503 (1972) (emphasis added). "Thus, an error with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error." *United States v. Lewis*, 802 F.3d 449, 461 (3d Cir. 2015) (internal quotations omitted).

Similar sentiments were expressed by the Supreme Court in *Ballard v. United States*, 329 U.S. 187 (1946), where the Court found that the wholesale exclusion of women from the grand jury constituted structural error which warranted dismissal of the indictment without the need for a finding of prejudice. The Court noted:

> The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; *the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded.* The exclusion of one may indeed make the jury less representative of the community than would be true if an economic or racial group were excluded.

*Id*. at 193-94 (emphasis added); *see also Peters*, 407 U.S. at 503 ("When any large and identifiable

segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. . . .  It is in the nature of practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce.").

These cases suggest that the biased-related structural errors in the grand jury are of the nature in which the harm that they cause is not limited to the particular facts and circumstances of a given case, but infect the entire judicial system, *Peters*, 407 U.S. at 503; "undermines the justice system," *Ramseur*, 983 F.2d at 1225; and permeates the inner fabric of our democratic society. *id.*; *see also Rose*, 443 U.S. at 556. The effect of such harm is "necessarily unquantifiable and indeterminate," *Lewis*, 802 F.3d at 465 (quoting *Gonzalez-Lopez*, 548 U.S. at 150 (internal citation omitted)), because its pervasiveness and the subtlety of its impact defies precise delineation. Thus, "the overriding imperative to eliminate [such] systemic flaw[s] in the charging process, as well as the difficulty of assessing [their] effect[s] on any given defendant," requires that indictments infected with such errors be quashed or dismissed. *Vasquez*, 474 U.S. at 264.

Unlike the cases involving blanket exclusion of grand jurors based on their race or gender, the impact of the error here was not "too subtle and too pervasive to admit of confinement to particular issues or particular cases." *Peters,* 407 U.S. at 503-04. To the contrary, the error here was limited solely to Defendants in the instant matter and grounded solely in the facts and circumstances of this particular case. In other words, the error here was case specific: an alleged victim of one Defendant herein was included in the Grand Jury. No other matters heard by the same Grand Jury panel suffered as a result of the irregularity, and no defendants in other matters before this Court were affected. In short, the error here did not have the kind of broad-scale and pervasive impact characteristic of the discriminatory exclusion errors found to be structural errors

in the grand jury context. "[T]here [was] [no] injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the process of our courts." *Cf. Ballard*, 329 U.S. at 195.

Nor was the impact here "unquantifiable and indeterminate," *Lewis*, 802 F.3d at 461, so as to defy analysis by harmless error standards. *Gonzalez-Lopez*, 548 U.S. at 148. We know from the record that an alleged victim of the tax fraud scheme charged by the Government was a member of the Grand Jury; that she was present for deliberations; and that she voted to indict Defendants. At worst, the alleged victim realized her connection to the case; was biased against both the Defendant who allegedly victimized her and the other Defendants as well; and tainted the rest of the grand jurors with her biased views. Unlike the systemic discrimination in *Ballard* and *Peters*, wherein discernment of the actual harm is impossible to quantify or qualify because its impact is "too subtle and too pervasive," *Peters*, 407 U.S. at 503, the harm here is devoid of the kind of "subtle interplay" and "imponderables" to which the Supreme Court referred in *Ballard*. 329 U.S. at 193. Instead, the infection stemming from the alleged victim here is both identifiable and quantifiable because the nature of the harm is determinative, and its scope is limited.

Finally, this is not the type of error where remedies other than dismissal are impractical. Indeed, in view of the identifiable and determinate nature of the error and its limited scope, the error is easily remedied by presentment of the case to a grand jury that does not include a victim of the alleged tax fraud scheme or some other similar taint. The facts of this case—in which a superseding indictment was filed—illustrate this point.

A review of cases involving claims of a biased grand juror supports the Court's conclusion that the error here is subject to harmless error review. For example, in *United States v. Waldbaum, Inc.*, 593 F. Supp 967 (E.D.N.Y. 1984), defendants moved to dismiss the indictments on the ground

that they were returned by a biased grand jury. The case involved an alleged conspiracy to deprive consumers in New York of their ability to use coupons at defendants' grocery stores. Defendants argued that the grand jury was biased because, as part of the community where defendants' stores operated, the members of the grand jury "would perceive themselves as victims of the conspiracy alleged in the indictments." *Id.* at 968. In denying defendants' motion to dismiss the indictments, the court applied the harmless error inquiry, noting that, for defendants to have succeeded, they must show "actual grand jury bias and prejudice," which they had failed to do. *Id.* at 970. Thus, in this and a plethora of other bias-related grand jury cases, a harmless error inquiry was employed.[17] The same applies here.

In view of the foregoing, the Court finds that the error here is not structural error wherein prejudice is presumed, alternative remedies are impractical, and dismissal of the indictment is necessitated. Instead, the error is subject to harmless error review. Accordingly, the Court will

---

[17] *See, e.g., Jennings*, 991 F.2d at 729 (inclusion of a grand juror who was a friend of one of defendant's victims); *United States v. Remington*, 191 F.2d 246, 252 (2d Cir. 1951) (the grand jury foreman "had a financial interest in a book which the government's chief witness was writing and he exercised undue influence in the procurement of the indictment, particularly during the grand jury's examination of defendant"); *Caballero*, 286 F. Supp. 3d at 251 (alleged biased grand jury foreperson was a county Assistant District Attorney, who may have been involved or was aware of some of defendants' cases in that jurisdiction); *United States v. Prochilo*, 2012 WL 3067462, at *1 (D. Mass. July 30, 2012) (grand jury foreperson, who was ultimately excused from service, knew defendant's father, whose name appeared on a chart mapping the subjects and targets of the ongoing investigation against defendant); *United States v. Lander*, 2009 WL 3230338, at *1 (N.D. Fla. Oct. 5, 2009) (alleged biased grand juror had "prior knowledge of the facts underlying the charges against [d]efendant"); *United States v. Davis*, 2003 WL 1064892, at *1 (E.D. Pa. Mar. 10, 2003) (alleged biased jurors were (1) a grand juror who lived near the family of one of the government's grand jury witnesses and whose children went to school with the witness; and (2) a grand juror who made an allegedly negative comment about the evidence presented against Defendant during the grand jury proceedings); *United States v. Moore*, 811 F. Supp. 112, 117 (W.D.N.Y. 1992) (the grand jury was the same grand jury panel which returned another indictment against defendant and heard testimony against him during both indictment proceedings).

deny Defendants' Motions to Dismiss based on allegations of structural error.[18]

### 3. Harmless Error Analysis

As with their structural error argument, Defendants assert that the harmless error inquiry results in a dismissal of the Original Indictment *with prejudice*. (Dkt. No. 647 at 9). This argument also fails.

As noted earlier, the harmless error inquiry requires a showing that the defendant has been prejudiced by the error. As previously discussed, however, the harmless error inquiry also incorporates, in the final analysis, whether dismissal is the appropriate remedy under the circumstances of the particular case. In other words, even if prejudice to Defendants is established by means of a showing of actual bias, the question still remains whether dismissal of the indictment—and as Defendants claim, with prejudice—is warranted. *See Morrison*, 449 U.S. at

---

[18] Even if the Court had found the error at issue to be structural error—which it is not—this would not alter the Court's conclusion that the Motions to Dismiss on this ground must fail. While the gravamen of Defendant's claim is that the alleged structural error resulting from an allegedly biased grand juror in violation of the Fifth Amendment "is by itself sufficient to warrant dismissal *with prejudice*," they fail to cite any legal support for a "with prejudice" dismissal. (Dkt. No. 647 at 3, 4-9). Indeed, even in cases involving the well-established structural error resulting from racial discrimination in the selection of a grand jury, the Supreme Court has noted that "reversal does not render a defendant 'immune from prosecution' nor is a subsequent reindictment and prosecution 'barred altogether'. . . . A prisoner whose conviction is reversed by this Court [and indictment quashed] need not go free if he is in fact guilty, for [the State] may indict and try him again by the procedure which conforms to constitutional requirements.'" *Rose*, 443 U.S. at 558 (quoting *Hill v. Texas,* 316 U.S. 400, 406 (1942)); *see Patton v. Mississippi*, 332 U.S. at 469 ("our holding does not mean that a guilty defendant must go free. For indictments can be returned and convictions can be obtained by juries selected as the Constitution commands."); *see also Morrison*, 449 U.S. at 365 ("None of these [constitutional] deprivations [at the trial level] resulted in the dismissal of the indictment. Rather, the conviction in each case was reversed and the Government was free to proceed with a new trial."); *Vasquez*, 474 U.S. at 268 (Powell, J., dissenting) (granting relief for structural errors in grand jury proceedings will "require a new trial if that is still feasible"). Accordingly, under the circumstances here, any dismissal would not be with prejudice as Defendants assert, but *without prejudice*, thus permitting the Government to refile the charges within the time period permitted by 18 U.S.C. § 3288.

364-65. This is because "remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* at 364. Accordingly, as the Supreme Court stated in discussing a Sixth Amendment violation in *Morrison*: "Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365.

Conscious of the delicate balance that must always be employed when dealing with issues involving the grand jury, in view of the secrecy and independence that surrounds that body, the Court has determined that it need not decide the issue of prejudice under the circumstances here. In other words, assuming—without deciding—that actual bias can be shown, the Court will examine whether there is a cure for the error short of dismissal. In this regard, the Court will seek to "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure [Defendants an indictment returned by an unbiased grand jury under the Fifth Amendment] and a fair trial." *See Morrison*, 449 U.S. at 365.

This goal is achieved through the issuance of a valid superseding indictment without the taint that infected the Original Indictment—that is, the presence on the Grand Jury of an alleged victim of the tax fraud scheme charged by the Government. With the taint "identified" and "neutralized," the remedy is tailored to address the harm that results from being charged in an indictment returned by a biased grand jury. As the Government maintains, Defendants "will proceed to trial on an untainted superseding indictment." (Dkt. No. 660 at 15.) The filing of such a superseding indictment is thus an appropriate means of curing any prejudice which may have resulted from a prior error in the initial Grand Jury proceedings. *See, e.g., United States v. Marrero*, 643 F. App'x 233, 237 (3d Cir. 2016) (affirming denial of motion to dismiss indictment based on

alleged perjured testimony, finding that defendant could not show prejudice due to the return of a superseding indictment which was presented to a second grand jury absent the error made in the original proceedings); *United States v. Fisher*, 692 F. Supp. 495, 504 (E.D. Pa. 1988) (government's second superseding indictment cured any prejudice to defendants allegedly relating to perjured testimony which may have resulted from the prosecution's prior errors); *see also United States v. Collins,* 300 F. App'x 663, 666 (11th Cir. 2008) (alleged violation of law before original grand jury cured by re-presentment to new grand jury); *United States v. Bunty*, 617 F. Supp. 2d 359, 367 (E.D. Pa. 2008) (when superseding indictment is obtained without using allegedly tainted evidence presented to original grand jury, dismissal of superseding indictment is inappropriate).[19]

Under the circumstances here—that is, with a Superseding Indictment having been filed by the Government—the question becomes whether the Superseding Indictment is valid and thus a viable means of curing the defective Original Indictment. Because the Superseding Indictment was filed outside of the statute of limitations period, the ultimate issue is whether the Original Indictment, despite its defect, was validly pending when the Superseding Indictment was filed so as to allow the Superseding Indictment to relate back to the Original Indictment and save it from being time-barred by the statute of limitations. This ultimate issue, which the Court answers in the affirmative, will be discussed in Section II(A)(6), below.

---

[19] For the same reasons discussed in the structural error context, if dismissal of the Original Indictment were appropriate—which it is not—the dismissal would not be with prejudice as Defendants claim. Instead, it would be *without prejudice*, thereby allowing for refiling by the Government under 18 U.S.C. § 3288. *See* n. 18, *supra*.

### 4. Prosecutorial Misconduct

Defendants also argue that, even if the Court does not find structural error under the circumstances here, dismissal of the Original Indictment with prejudice is still warranted due to prosecutorial misconduct. (Dkt. Nos. 517 at 8-10; 567 at 8-11; 581 at 4). This argument fares no better.

#### a. Applicable Legal Principles

Claims of prosecutorial misconduct before a grand jury are generally subject to the harmless error inquiry. *United States v. Greenspan*, 2016 WL 4402822, at *6 (D.N.J. Aug. 16, 2016); *United States v. Breslin*, 916 F. Supp. 438, 441 (E.D. Pa. 1996). Thus, "there must be a showing of actual prejudice to the defendants." *Breslin*, 916 F. Supp. at 441 (citing *Bank of Nova Scotia*, 487 U.S. at 255-56); *see also United States v. Van Engel*, 15 F.3d 623, 631-32 (7th Cir. 1993) ("A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense . . ."); *United States v. Davis*, 2003 WL 1064892, at *1 (E.D. Pa. Mar. 10, 2003) ("a harmless error inquiry applies to claims of prosecutorial misconduct before the grand jury.") (citing *Bank of Nova Scotia v. United States*, 487 U.S. at 255-56)).

When faced with a motion to dismiss an indictment based on prosecutorial misconduct before the grand jury, the Third Circuit requires a two-part inquiry. *See United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987). First, the court must determine whether misconduct has occurred. *Id.* A finding of prosecutorial misconduct requires knowledge on behalf of the prosecutor, or a deliberate act conducted by the government. *See, e.g., United States v. Liciardello*, 93 F. Supp. 3d 365, 368 (E.D. Pa. 2015) ("[t]he Government must know that the testimony at issue is perjured"). In addition, reckless conduct, as evinced by a "pattern of violations" conducted by

the prosecutor, may also suffice to show "willful misconduct" and therefore warrant dismissal. *United States v. Lashley*, 2011 WL 5237291, at *5-6 (E.D. Pa. Nov. 3, 2011), *aff'd,* 524 F. App'x 843 (3d Cir. 2013) (finding prosecutor's errors were not reckless or intentional and denying dismissal for *Brady* violation).

In contrast, "[n]egligence and [] inadvertent errors" made by the government "do not rise to the level of prosecutorial misconduct warranting dismissal of an indictment." *Fisher*, 692 F. Supp. at 505. Further, mere speculation that prosecutorial misconduct may have occurred in the grand jury is insufficient to justify dismissal of an indictment. *United States v. Dowling*, 2019 WL 1053607, at *4 (D.V.I. Mar. 5, 2019) (denying motion to dismiss indictment due to prosecutorial misconduct when there were, inter alia, "only speculative or conclusory statements" regarding whether the Government knew that one of the witnesses they presented before the grand jury was being untruthful); *United States v. Eisenberg*, 773 F. Supp. 662, 710 (D.N.J. 1991) (denying motion to dismiss indictment "to the extent it is based on speculation" that prosecutorial misconduct occurred before the grand jury). Nor is such speculation sufficient to warrant disclosure of discovery related to the grand jury proceedings. *United States v. Shane,* 584 F. Supp. 364, 367 (E.D. Pa 1984) ("courts generally reject unsupported beliefs and conjectures as grounds for disclosure of grand jury materials to defendants" (internal citations omitted)).

The second prong of the prosecutorial misconduct inquiry requires the Court to determine whether the alleged misconduct resulted in prejudice to defendant. *Bank of Nova Scotia*, 487 U.S. at 263 (a district court may "not dismiss [an] indictment on the basis of prosecutorial misconduct" before the grand jury without making a factual finding that the defendant was prejudiced by such misconduct); *Martino*, 825 F.2d at 759 (holding that in determining whether prosecutorial misconduct occurred before the grand jury which would warrant dismissal of the indictment, "in

every case we looked to prejudice."). A finding of prejudice exists only if it is established that the prosecutor's "'violation substantially influenced the grand jury's decision to indict,' or . . . there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Soberon*, 929 F.2d at 939-40 (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

Finally, when evaluating motions to dismiss due to claims of prosecutorial misconduct, the court must determine "whether any sanction, such as dismissal of the indictment or suppression of the evidence, is warranted." *Fisher*, 692 F. Supp. at 502 (citing *Martino*, 825 F.2d at 759). The Third Circuit has cautioned that "dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized." *Birdman*, 602 F.2d at 559 (internal citation and quotation marks omitted); *see also United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011) (noting that "dismissal of an indictment is the most drastic remedy") (internal citation and quotation marks omitted).

### b. Analysis

Here, Defendants argue that prosecutorial misconduct was committed by the Government when it "allowed" an alleged victim to serve on the Grand Jury that indicted Defendants and failed to immediately disclose the error under *Brady*. (Dkt. Nos. 517 at 9; 567 at 8-9). Further, Defendants contend that the type of prosecutorial misconduct that occurred here was prejudicial as it "affected the grand jury's decision to indict [Defendants] and creates a grave doubt as to whether the grand jury's decision was free from substantive influence of the Government's misconduct." (Dkt. No. 517 at 8).

According to Defendants, such prosecutorial misconduct is evinced by the fact that Agent Wagner interviewed the alleged victim eight months prior to the Grand Jury proceedings (and presumably should have recognized her); that her name appeared on the Original Indictment and

on at least one exhibit presented by the Government to the Grand Jury (and presumably, the Government should therefore have been reminded of her status as an alleged victim); and that the Government failed to act promptly in disclosing the error. (Dkt. No. 567 at 8-9). Defendants appear to go even further and suggest that the Government was actually aware of the irregularity that occurred in the Grand Jury at the time of the Grand Jury proceedings,[20] and that by "allowing" the alleged victim to serve as a grand juror and then compounding the problem by not promptly disclosing the error, the Government engaged in prosecutorial misconduct. *Id.* at 8.

In opposition, the Government argues that Defendants have failed to establish that any type of prosecutorial misconduct occurred, much less that it was prejudicial. (Dkt. Nos. 549 at 9-10; 660 at 11-16). Specifically, the Government asserts that the "mere presence" of an alleged victim in the Grand Jury, alone, is not sufficient to establish that the alleged victim was biased. (Dkt. Nos. 549 at 7; 660 at 13). According to the Government, Defendants have offered no factual support showing that the alleged victim was able to compromise the Grand Jury's decision to indict. (Dkt. Nos. 549 at 9-10; 660 at 13). Further, the Government derides what it deems as Defendants'

---

[20] In her Motion to Compel, Alexander states: "The Government knew that one of the grand jurors to the original indictment was an alleged victim of the alleged tax scheme. . . . The Government . . . knew at the time." (Dkt. No. 518 at 2-3). Alexander credits her knowledge in this regard to: (1) a conversation her attorney had with counsel for S. Benjamin, Edward Barry, Esq., in which Attorney Barry allegedly stated that AUSAs Meredith Jean Edwards and Alphonso G. Andrews "disclosed to him there was a victim of the Identity Theft charged in the criminal matter that was empaneled and sat on the Grand Jury that returned the Original Indictment;" (2) a declaration of Michael A. Rogers, Esq., then counsel for Defendant Thompson, in which Attorney Rogers states that AUSA Andrews "confirmed that the victim/grand juror was known to be a victim prior to serving as a grand juror in this matter because the victim/grand juror had been interviewed by a government agency regarding the tax scheme eight months prior to serving on the grand jury that returned the original indictment against Defendants in this matter; and (3) unspecified assertions in J. Benjamin's Emergency Motion to Dismiss. (Dkt. Nos. 518 at 2, n.1; 518-1 at ¶ 6; 518-2 at ¶ 5).

"outrageous" suggestion that the Government "would knowingly allow a grand juror to sit on a panel to decide on a case in which the juror is a witness." (Dkt. No. 549 at 11) (emphasis omitted).

The Court concludes that Defendants' prosecutorial misconduct argument must fail. The Court's *in camera* review of pertinent Grand Jury materials and the representations of the Government on the record show the following: (1) the alleged victim was interviewed by Agent Wagner eight months prior to his testimony in the Grand Jury proceedings; (2) the alleged victim was a member of the Grand Jury for this case; (3) at the beginning of the Grand Jury proceedings, the Government announced that Defendant Liverpool was involved in this case and asked members of the Grand Jury whether they knew anybody involved; (4) the Government did not receive any positive responses to its inquiry; (5) the alleged victim's name appeared on the Original Indictment and on one exhibit presented by the Government to the Grand Jury; (6) the alleged victim participated in the proceedings and deliberations and voted to indict Defendants; (7) all 19 grand jurors voted for the True Bill and the Indictment was filed in September 2016; (8) the Government asserted that the prosecutor learned of the irregularity in 2017, after which there were protracted interoffice and interdepartmental discussions regarding how to address the matter in light of grand jury secrecy and disclosure obligations; (9) a Superseding Indictment by a newly constituted Grand Jury was returned in October 5, 2018; and (10) the Government revealed the irregularity to certain Defendants who were in plea negotiations approximately three weeks before the then scheduled November 5, 2018 trial.

One might argue from the facts that the Government should have been more careful in cross-referencing the grand jurors with its list of victims to ensure that there was no overlap, and

that its failure to do so was error.[21] The Court agrees. However, the Court concludes that, on the record here, the Government's conduct would, at worst, be considered sloppy or negligent. This is insufficient to constitute prosecutorial misconduct, let alone to warrant dismissal of the Original Indictment. *See Fisher*, 692 F. Supp at 505; *United States v. Durante*, 2012 WL 6155890, at *4 (D.N.J. Dec. 11, 2012), *aff'd,* 612 F. App'x 129 (3d Cir. 2015) (denying defendants' motion to dismiss superseding indictment because despite the Government's "sloppiness and failures of communication among Government agents, the [c]ourt finds no basis to characterize these problems as willful or even grossly negligent misconduct."). This is especially so given the "rarity with which the remedy [of dismissal] has been employed" for claims of prosecutorial misconduct. *See Blatt*, 2007 WL 3287397, at *7.

Alexander seeks to bolster her claim of prosecutorial misconduct by seemingly asserting that the Government actually *knew* of the irregularity at the time of the Grand Jury proceedings, not after the fact as AUSA Andrews maintains. *See* n.20, *supra*; (Dkt. No. 518 at 2-3; 549 at 11; 635-1 at 1). In so doing, Alexander makes a quantum leap from statements in the declarations upon which the accusation purportedly rests[22] to the conclusion that the Government *knew* at the time of the Grand Jury proceedings that a victim of the alleged tax fraud scheme was a member of the Grand Jury. Alexander's bold statement—which in reality is unsupported by the contents of the declarations—is nothing but sheer speculation.

---

[21] It appears from the Original Indictment that the tax returns at issue were allegedly filed under some of the Defendants' names and at least 70 other individuals. (Dkt. No. 1.)

[22] The statements in the declaration of John K. Dema, Esq. and Attorney Rogers, respectively, say nothing more than there was a victim who was a grand juror and that the Government was aware that she was a victim prior to the time of her service on the Grand Jury—facts that are not in dispute. *See* n. 20, *supra.*

Defendants then posit that, if not deliberate, the Government's conduct in "allow[ing] a 'victim' and witness to be part of the grand jury" (Dkt. No. 517 at 8) constituted "*reckless disregard* for Defendant's constitutional rights." (Dkt. No. 567 at 8). While the Third Circuit has established that "[w]illful prosecutorial misconduct may be demonstrated through 'a constitutional violation that results from a reckless disregard for a defendant's constitutional rights,' . . . 'the challenged conduct must be *shocking, outrageous, and clearly intolerable*' and [] 'this is an extraordinary defense reserved for only the *most egregious* circumstances.'" *United States v. House*, 2015 WL 4111457, at *24 (W.D. Pa. July 8, 2015) (emphasis added) (citing *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255-56 (3d Cir. 2005) and *United States v. Nolan-Cooper*, 155 F.3d 221, 230-31 (3d Cir. 1998)); *Serubo*, 604 F.2d at 817-18 (discussing that abuse of grand jury proceedings that are "entrenched," or "flagrant or persistent" may warrant dismissal of indictment with prejudice). Such conduct clearly is not borne out by the record here.[23]

Nor are Defendants permitted disclosure of grand jury materials and internal Government communications in an attempt to unearth support for their claim of prosecutorial misconduct.[24]

---

[23] While the Court is of the view that the Government's handling of the irregularity in this case was far from ideal—including the delay in deciding how to address the issue and the manner in which it was disclosed—the record is devoid of any indication that the Government acted deliberately or recklessly in "allowing" an alleged victim to serve on the Grand Jury that returned the Original Indictment in this case. Further, Defendants' insertion of an alleged *Brady* violation into the mix is unavailing as discussed in Section III below.

[24] Defendants request the following materials: discovery related to the empaneling of the Grand Jury; identification of the victim who served on the Grand Jury; the circumstances surrounding the Government's knowledge that the victim served on the Grand Jury; records of the jury clerk; Grand Jury transcript proceedings; and the waiver presented by the Government to other co-defendants. (Dkt. No. 491 at 7). Defendants additionally seek disclosure of evidence relating to the witness who testified before the Grand Jury, the documents shared with the Grand Jury, the interview of the alleged victim prior to her inclusion in the Grand Jury, and the Government's screening process for the Grand Jury. (Dkt. No. 581 at 4).

Defendants' suggestion that there was some willful or deliberate misconduct by the Government is very speculative. In view of the secrecy of grand jury proceedings and the general prohibition against disclosure, as well as the privilege that attaches to internal Government communications, the Court will not allow Defendants to engage in a fishing expedition in search of support for their speculative theory of prosecutorial misconduct. *See United States v. Fields*, 2016 WL 1428113, at *11 (E.D. Pa. Apr. 12, 2016) (denying defendant's request for disclosure of grand jury materials because his assertion of misconduct was speculative and his request for materials reflected that defendant sought "to engage in a fishing expedition to uncover the hypothesized prosecutorial misconduct"); *United States v. Goldman*, 439 F. Supp. 337, 351 (S.D.N.Y. 1977) (denying defendant's requests for governmental communications in connection with the investigation or prosecution of the case because, in addition to these materials not being discoverable under Fed.R.Crim.P 16(a)(2), defendant's speculative assertion as to what these items "might uncover" as it pertains to its claim of prosecutorial misconduct is insufficient to make the necessary "factual showing"); *see also Douglas Oil Co. of Cal. v. Petrol Stops NW*, 441 U.S. 211, 218 (1979) ("the proper functioning of the grand jury system depends on the secrecy of the grand jury proceedings"); *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982) (noting that grand jury proceedings have historically and presumptively been protected against disclosure).[25]

Accordingly, to the extent that Defendants' Motions to Dismiss the Original Indictment are based on an allegation of prosecutorial misconduct, the Motions are denied. In addition, for the foregoing reasons, the Court will also deny Defendants' requests for disclosure of the Grand Jury

---

[25] Assuming that prosecutorial misconduct could somehow be established—although the Court to the contrary—a dismissal of the Original Indictment *with prejudice* as Defendants advocate, is such an extreme remedy as to be unimaginable under the circumstances here. Thus, once again, re-indictment by the Government under 18 U.S.C. § 3288 would remain available.

materials and internal Government communications to the extent that they are sought in connection with Defendants' claims of prosecutorial misconduct.

## 5. Fed.R.Crim.P. 6(d)(2)

Defendants further argue in the alternative that the Original Indictment should be dismissed with prejudice because the alleged victim's presence during the Grand Jury proceedings violated Fed.R.Crim.P. 6(d) ("Rule 6(d)"), which governs who is allowed to be present while the Grand Jury is in session and during its deliberations and voting. (Dkt. No. 517 at 6-7; 567 at 5-6). During deliberations and voting, only jurors (and any needed interpreter) are allowed to be present. Fed.R.Crim.P. 6(d)(2). Here, Defendants contend that not only was the alleged victim present while the Grand Jury was in session, she was also present for deliberations and voting—facts admitted by the Government and confirmed by the Court's *in camera* review.

The Court finds this argument unavailing. First, despite her status as a victim, the juror was qualified and serving as a juror. Thus her presence was technically permissible under Rule 6(d). Second, and more importantly, even assuming that the error in the Grand Jury constituted a Rule 6(d) violation, the Supreme Court in *Bank of Nova Scotia* treated a violation of Rule 6(d) in the same manner as any error subject to harmless error review. 487 U.S. at 263. Accordingly, for the same reasons previously discussed in the harmless error review context (*see* Section II(A)(3) *supra*), including that the Superseding Indictment cured any prejudice that may have resulted from the presence of the alleged victim in the Grand Jury, the Court rejects Rule 6(d) as grounds for dismissing the Original Indictment.

6. **The *Grady* Rule**

Having determined that a superseding indictment presents an available remedy short of dismissal for curing the error in grand jury proceedings, the question remains as to whether the Superseding Indictment filed by the Government is valid under the circumstance here. It is to this issue that the Court now turns.

Defendants argue that because the Original Indictment was void ab initio due to the irregularity that occurred in the Grand Jury proceedings, the Original Indictment was never "validly pending" for purposes of the *Grady* rule that would allow the Superseding Indictment to relate back to the Original Indictment and be timely for statute of limitations purposes. (Dkt. Nos. 517 at 4-6; 647 at 5-8, 13-15). The Court finds, however, that the Original Indictment was validly pending when the Superseding Indictment was filed because there was nothing that rendered the Original Indictment void ab initio or non-existent as Defendants claim. Further, because the Superseding Indictment did not materially broaden or substantially amend the Original Indictment, the Superseding Indictment relates back to the Original Indictment and was timely filed.

a. **Applicable Legal Principles**

Normally, "[t]he [statute of] limitations period [] begins to run from the date of the last overt act . . . alleged in the indictment." *United States v. Crawford*, 60 F. App'x 520, 530 (6th Cir. 2003) (internal citation omitted). However, "[o]nce an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment." *United States v. Friedman*, 649 F.2d 199, 203 (3d Cir. 1981). "The statute begins to run again on those charges only if the indictment is dismissed, and the Government must then reindict before the statute runs out or within six months, whichever is later, in order not to be time-barred." *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976); *see* 18 U.S.C. § 3288.

Under the *Grady* rule, which was adopted by the Third Circuit in *United States v. Friedman,* 649 F.2d at 203, "[s]ince the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time *while the first indictment is still validly pending*, if and only if it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations." *Friedman,* 649 F.2d at 203-04 (emphasis added); *see also United States v. Oliva,* 46 F.3d 320, 324 (3d Cir. 1995) (date of initial indictment controls for statute of limitations purposes as long as the superseding indictment does not "materially broaden or substantially amend the charges."). Accordingly, for a superseding indictment to be able to relate back to a preceding indictment, the following must be established: (1) the preceding indictment relied upon must have been validly pending at the time the superseding indictment was returned; and (2) the superseding indictment cannot materially broaden or substantially amend the charges. *United States v. Birks*, 656 F. Supp. 2d 454, 458 (D.N.J. 2009) (citing *Friedman,* 649 F.2d at 203-04 and *Grady,* 544 F.2d at 601-02).

Here, Defendants do not contend that the Superseding Indictment in any way expanded the charges listed in the Original Indictment. (Dkt. Nos. 647 at 5; 660 at 4). Indeed, the Indictments at issue are identical, except that the full names of the victims were changed to their initials and minor alterations were made to the "to wit" clauses in some counts. Thus, the question at issue is whether the Original Indictment was validly pending at the time the Superseding Indictment was issued. The Court finds in the affirmative.

### b. Analysis

The statute of limitations in the instant matter is five years. 18 U.S.C. § 3282. The latest offense charged in the Original Indictment occurred in July 2012. Thus, the Government's deadline to file an indictment would have been in July 2017. The Original Indictment was filed in September

2016, and was therefore within the five-year limitations period. However, the Superseding Indictment was filed on October 5, 2018—outside the relevant statutory period.

Defendants contend that "[a]n indictment that is not returned by an *unbiased* jury . . . was never validly issued." (Dkt. No. 647 at 13-14). Defendants thus claim that, because the Original Indictment was "not the genuine issue of a grand jury within the meaning of the Constitution," it was never validly pending. *Id*. at 15 (relying in part on Black's Law Dictionary's definitions of the words "validly" and "pending."). Therefore, according to Defendants, the Superseding Indictment was unable to relate back to the Original Indictment, rendering it time-barred by the statute of limitations and warranting its dismissal with prejudice. *Id*. at 14, 17.[26]

In opposition, the Government argues that because the Original Indictment was validly pending at the time the Superseding Indictment was filed, the Original Indictment was competent to toll the statute of limitations "until a court declares [it] invalid [] or until it is dismissed." As a result, the Superseding Indictment relates back to the Original Indictment and is not time-barred by the statute of limitations. (Dkt. No. 660 at 2-4). Consequently, the Government argues that Defendants' focus on the validity of the Original Indictment is "misplaced," *id*. at 3, since "a defective, insufficient and even voidable indictment can nevertheless be 'validly pending.'" *Id*. In other words, "despite its potential to be dismissed, [the Original Indictment] is nevertheless sufficient to toll the limitations statute." *Id*. at 4. Further, the Government maintains that it "is [proceeding] to trial, not on the [O]riginal [I]ndictment, but on the [S]uperseding [I]ndictment,"

---

[26] Defendants' argument turns *Costello*, 350 U.S. at 363, on its head. In the context of eschewing defendants' efforts to challenge the sufficiency of the evidence supporting an indictment, the Supreme Court in *Costello* held that an indictment "returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial on the charges on the merits." *Id.* Defendants now take the inverse of *Costello*'s reasoning, attach to it the concepts of "not validly pending" and "dismissal with prejudice," and offer it as a sound legal principle without any authority supporting the same.

which "was returned by a legally constituted unbiased grand jury and its inherent validity is not an issue." *Id*.

The focus here is on the application of the statute of limitations. The core purpose behind the statute of limitations in criminal cases is "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). Likewise, it minimizes the danger that a person may face "official punishment because of acts in the far-distant past." *Id.* Indictments serve the purpose of putting a defendant on notice of the charges against her so that she is able to prepare a defense. An indictment also provides sufficient detail to permit a defendant to assert— when appropriate—the double jeopardy defense. *United States v. Branham*, 1987 WL 12252, at *6 (D. Del. 1987).

Defendants do not dispute that the Original Indictment was issued within the applicable statute of limitations. Nor do they claim that the Original Indictment was insufficient to either notify them of the charges they faced or to raise a double jeopardy defense from future charges. Instead, they cite—with no compelling authority—that the defect in the composition of the Grand Jury makes the Original Indictment void ab initio for purposes of the statute of limitations.

In *United States v. Grady*, 544 F.2d at 601-02, an indictment charging two defendants with federal crimes was filed shortly before the statute of limitations expired. It was later replaced by a superseding indictment filed after the limitations period expired. On appeal, defendants alleged that their prosecution was barred by the five-year statute of limitations, and thus the charges of which they were convicted were untimely filed. *Id*. at 601.

The Second Circuit in *Grady* rejected the defendants' arguments. The court found that once an indictment is brought, the statute of limitations is tolled as to the charges contained in the

indictment. *Id.* at 601. Because the original indictment tolled the statute of limitations, it would begin to run again only if the indictment was dismissed and the Government failed to indict the defendants within the six-month period allowed by 18 U.S.C. § 3288. With respect to the superseding indictment, the Second Circuit followed the lead of other courts and held that it related back to the filing date of the original indictment as long as any changes in the superseding indictment were "'amendments of 'form'" or were "'trivial' or 'innocuous'" amendments. *Id.* at 602 (quoting *United States v. Colasurdo*, 453 F.2d 585, 590-51 (2d Cir. 1971), *cert. denied* 406 U.S. 917 (1972) and *Stirone v. United States*, 361 U.S. at 216)).

In considering the interplay between superseding indictments and the applicable statute of limitations, the Court in *Grady* focused on the "sensible application of the policies underlying the statute of limitations"—providing the defendants notice of the charges and the ability to prepare a defense to the same. Thus, as long as the original indictment was timely filed and validly pending, the superseding indictment relates back to the date of the earlier indictment, except to the extent that the superseding indictment expands or alters the charges set forth in the previous indictment. *Id.* at 602. Further, the focus in *Grady* was not on whether the original indictment is "valid" in the sense that it is free of defect, but whether it is "validly *pending*" at the time of the superseding indictment, i.e., it had not been dismissed or otherwise legally barred from prosecutions proceeding under it. *Id.* at 601-02; *see United States v. Smith*, 197 F.3d 225, 228-29 (6th Cir. 1999) ("[A]n original indictment remains pending until it is dismissed, or until double jeopardy or due process would prohibit prosecution under it."); *United States v. O'Bryant*, 998 F.2d 21, 23 (1st Cir. 1993) ("a superseding indictment which supplants a timely-filed indictment, still pending, is itself to be read as timely vis-à-vis a given defendant so long as it neither materially broadens or substantially amends the charges); *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir 1990) (original

indictment remains pending until it is dismissed or until double jeopardy or due process forbids its prosecution); *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990), *cert. denied* 498 U.S. 1067 (1991) ("superseding indictment filed while the initial indictment is pending is timely unless it broadens or substantially amends the charges"); *United States v. Jones*, 816 F.2d 1483, 1487 (10th Cir. 1987) (statute of limitations measured from the date of the original indictment, not the superseding indictment).

The Third Circuit in *Friedman*, 649 F.3d at 203, accepted the reasoning from the Second Circuit's opinion in *Grady*. Friedman had been timely indicted for conspiracy and five counts of interstate transportation of stolen, converted or fraudulently taken checks. *Id.* at 200-01. Friedman filed a motion to dismiss the various charges because they failed to meet the statute's minimum jurisdictional amount of $5,000. *Id.* at 200. Before the district court ruled on the motion to dismiss, the Government filed a superseding indictment—after the five-year statute of limitations had expired—to address the problem. *Id.* at 202-03. Notwithstanding the shortcomings of the original indictment—containing facts which did not state a federal offense—the Third Circuit concluded that it was validly pending so as to allow the superseding indictment to relate back. *Id.* at 203; *see also United States v. Spanier*, 744 F. App'x 351, 354 (9th Cir. 2018) (the "central concern in determining whether the counts in a superseding indictment should be tolled based on similar counts included in the earlier indictment is notice [of the charges]"); *United States v. Smith*, 197 F.3d at 228 (even if the original indictment was defective by failing to allege an overt act for conspiracy within the statute of limitations, a superseding indictment resolving that point, related back to the earlier indictment when the original indictment as a whole gave notice of the charges); *United States v. Rutkoske,* 394 F. Supp. 2d 641, 645 (S.D.N.Y. 2005) (holding that a defective

original indictment, which failed to allege an overt act within the statute of limitations period, was nevertheless "validly pending" at the time the superseding indictment was filed).

Here, the Original Indictment was sufficient to give clear notice to Defendants of the charges for which they needed to prepare a defense, and against which they would be protected by the double jeopardy doctrine. In addition, the Original Indictment was filed prior to the expiration of the five-year statute of limitations, and had not been dismissed, nor is prosecution prohibited under the Original Indictment in the manner contemplated by the *Grady* rule. Because the Original Indictment was still validly pending when the Superseding Indictment was returned on October 5, 2018 and the Superseding Indictment did not expand the charges, the *Grady* rule applies, and the Superseding Indictment relates back to the Original Indictment. *Friedman,* 649 F.2d at 203-04. Thus, the Superseding Indictment was not time-barred by the statute of limitations and is valid. *Id.*; *see also United States v. Yielding*, 657 F.3d 688, 703 (8th Cir. 2011) (a superseding indictment returned while the original indictment is validly pending relates back absent any substantial broadening of the charges in the original indictment); *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990) ("a superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges.").[27]

---

[27] Defendants cite to *United States v. Crypsopt Corp.*, 781 F. Supp. 375 (D. Md. 1991) and *United States v. Gillespie*, 666 F. Supp. 1137 (N.D. Ill. 1987) in support of their position that defective indictments are not "validly pending." (Dkt. No. 517 at 5, n.3). Interestingly, *Crypsopt* cited to *United States v. Hooker*, 841 F.3d 1225 (4th Cir. 1988) (en banc) in which the Fourth Circuit vacated a RICO conviction due to a defective indictment while chastising the Government by noting that it "easily could have obtained a superseding indictment" to correct the defect prior to trial. *Id.* at 1232. Further, while the court in *Gillespie* dismissed counts in a superseding indictment, finding that they could not relate back to an indictment which was issued by a grand jury after the expiration of its 18-month term, the Second Circuit—the Circuit that authored *Grady*—specifically rejected *Gillespie* as "not the law of this Circuit" in *United States v Milstein*, 401 F.3d 53, 67 (2d Cir. 2005) (superseding indictment adding jurisdictional allegation permitted under *Grady*). Thus,

Accordingly, the statute of limitations argument against the Superseding Indictment fails.[28]

### III. MOTION TO COMPEL

#### A.    Background

Defendant Alexander's "Motion to Compel Government's Production of *Brady* Material" (Dkt. No. 518) ("Motion to Compel") supplements Defendant J. Benjamin's request for production of grand jury materials included in her Emergency Motion to Dismiss. (Dkt. No. 491). In the Motion to Compel, Defendant seeks two categories of documents: the first category is referred to as "*Brady* material" (Dkt. No. 518 at 4);[29] and the second category is described as grand jury materials for which there is a "particularized need" in order to confirm the presence of a victim in

---

to the extent that Defendants rely on cases that embody a different interpretation of *Grady* than the Second Circuit in *Grady* or the Third Circuit in *Friedman*—which adopted *Grady*—they do not advance their cause.

[28] The Court finds it unnecessary to address further the parties' arguments regarding the applicability of 18 U.S.C. § 3288 (Dkt. Nos. 647 at 13-16; 660 at 10-12) which permits reindictment after *dismissal* of an indictment for any reason except those based on statute of limitations grounds. Because the Court had not dismissed the Original Indictment prior to the filing of the valid Superseding Indictment, the statute's "savings clause" does not come into play under these circumstances. Nonetheless, the Court notes that 18 U.S.C. § 3288 is instructive here. As discussed in footnotes 18 and 19, *supra*, any dismissal of the Original Indictment here would have been without prejudice, thus allowing the Government to re-indict Defendants within six months of the dismissal under Section 3288. It would be anomalous if the Government were permitted to re-indict after a dismissal by the Court due to the irregularity, but the Government's action in attempting to cure the problem on its own initiative by means of a superseding indictment was precluded.

[29] Defendant Alexander seeks confirmation that the Government interviewed an alleged victim and witness who served on the Grand Jury. She also seeks to compel production of: (1) documents revealing the contents of the interview of the witness who later served on the Grand Jury and the identity of the persons involved in the interview; (2) internal Government communications regarding its discovery that an alleged victim of the tax fraud scheme served on the initial Grand Jury; (3) Government communications discussing whether and when to disclose the irregularity to Defendants; (4) the Government's communications regarding its decision to reveal the matter to some Defendants during plea negotiations, but not to others; and (5) the waiver regarding the defect that Defendants were required to sign and drafts thereof. (Dkt. No. 518 at 4).

the grand jury, examine the bias caused by the victim's presence, and examine "potentially prejudicial misconduct." *Id.* at 7.[30] Except for information or documentation disclosed in this Memorandum Opinion or previously disclosed by the Government, for which the requests would be moot (Dkt. No. 568 at 1-2), Alexander's Motion to Compel and J. Benjamin's requests for discovery will be denied.

## B. Applicable Legal Principles

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to *guilt or to punishment*[.]" *Id.* at 87 (emphasis added). To establish a *Brady* violation, a defendant must show that: (1) evidence was favorable to the defense—either because it was *exculpatory* or could be used for *impeachment*; (2) the suppressed evidence was either willfully or inadvertently suppressed by the Government; and (3) the evidence must have been *material* such that prejudice resulted from its suppression. *Dennis v. Sec'y Pa. Dep't. of Corrs.,* 834 F.3d 263, 284-85 (3d Cir. 2016) (internal citations omitted).

In *Brady*, the Court held that due process is violated when the prosecution withholds information from a defendant that "would tend to exculpate him or reduce the penalty. . .." 373 U.S. at 87-88. Brady had been convicted of first-degree murder and sentenced to death. His appeal

---

[30] Defendant Alexander requests: (1) the name of the alleged victim and witness who served on the Grand Jury; (2) the original Grand Jury transcripts, with the names of other grand jurors redacted, and the names of any persons not ultimately charged in the indictment redacted; (3) the original Grand Jury exhibits on which the alleged victim/grand juror's name appeared; (4) any Grand Jury subpoenas issued by the Original Grand Jury; (5) the count of the vote for indictment and whether the alleged victim/grand juror voted to indict; and (6) the transcripts of the Grand Jury that issued the Superseding Indictment, with juror names redacted. The requests relating to the second Grand Jury documents are sought "so that Defendant can determine the extent to which the original defect impermissibly tainted the latest grand jury." (Dkt. No. 518 at 7-8).

challenged the prosecutor's failure to disclose, before or during trial, extrajudicial statements made by his codefendant admitting that he—not Brady—was the person who killed the victim. *Id.* at 84. Based on its conclusion that the improperly withheld evidence was "material" to the defense, *id.* at 87-88, the Supreme Court remanded the case for a new trial on the question of punishment, finding that because the jury had the option to determine whether to impose a life sentence or the death penalty upon defendant's conviction, the withheld evidence was relevant to punishment. *Id.* at 93. However, the Supreme Court found that the withheld evidence was not material to Brady's guilt because it would not have been adequate to reduce the conviction from "'below murder in the first degree;" thus, the Court did not order a new trial as to his conviction. *Id.* at 89. Exculpatory evidence was later expressly expanded to include evidence that impeached Government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (noting there were occasions where the "'reliability of a given witness may well be determinative of guilt or innocence.'")

As for the materiality element of *Brady*, the Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995) explained:

> "[The] touchstone of materiality is a 'reasonable probability' of a different result. . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Id.* at 434. Whether evidence suppressed by the Government (or sought by the defense) is "material" under the *Brady* analysis "depends almost entirely on the value of the evidence relative to the other evidence mustered by the [Government]." *See Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) (quoting *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010)). A *Brady* violation requires a showing that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435.

## C.      Analysis

While Defendants classify the first category of materials sought as *Brady* materials, they have failed to clearly articulate how any of the information requested qualifies as exculpatory or impeachment material. Notwithstanding general references to "attack[ing] the reliability, thoroughness, and *good faith* of the investigation or [ ] impeach[ing] the credibility of the Government's witnesses" (Dkt. No. 518 at 5), the connection between the information sought and these *Brady*-related purposes remains unclear.[31] Equally opaque for *Brady* purposes are Defendants' references to "preferential treatment and selective prosecution" as they relate to how the Government disclosed information regarding the Grand Jury defect. (Dkt. No. 518 at 5).[32] Further, Alexander asserts that "the main issue behind [the Government's] *Brady* violation [is that] the Government suppressed the fact that the original indictment was not valid, hence the superseding indictment's statute of limitations had expired by the time it was filed on October 5, 2018." (Dkt. No. 567 at 10). However, Defendants have not cited any authority for the proposition that information relevant to a possible statute of limitations affirmative defense qualifies as *Brady* material. And, even if such authority existed, Alexander's "main issue," as found herein, is grounded in a faulty premise. In any event, prejudice cannot be shown in view of the full and fair

---

[31] To the extent that Defendants are seeking any material covered by the Jencks Act, under which defendants are entitled to a copy of "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified" *United States v. Prince*, 264 F.2d 850, 852 (3d Cir. 1959) (quoting 18 U.S.C. § 3500(b)), the Government is required to produce the statement only "[a]fter a witness called by the United States has testified on direct examination[.]" 18 U.S.C. § 3500(b). Thus, such a demand would be premature.

[32] To the extent that Defendants intend to refer instead to agreements not to prosecute or agreements to grant some form of preferential treatment (Dkt. No. 518 at 5), such agreements, if they exist, would be discoverable under *Giglio*, 405 U.S. at 154, if it is ultimately determined that there is, in fact, a witness who is a beneficiary of such an agreement.

opportunity that Defendants have had to raise their statute of limitations defense for resolution by this Court.

The second category of documents or information sought is grand jury material pertaining to a purported need to examine the bias caused by the victim's presence in the first Grand Jury, and Defendants' desire to bolster their claims of prosecutorial misconduct. (Dkt. No. 518 at 7). As discussed earlier, discovery for these purposes is not warranted or justified based on the Court's rulings herein. Further, Alexander's request for the grand jury transcripts for the Superseding Indictment because she deems examination of those transcripts "necessary to determine whether the Government permitted the taint to continue in its band-aid effort" (Docket No. 518 at 8) is grounded in nothing but speculation and is a recipe for a fishing expedition which the Court will not allow.

Because the Court finds no merit in Defendants' arguments, Alexander's Motion to Compel Government's Production of *Brady* material and J. Benjamin's request for production of grand jury material will be denied.[33]

## IV. CONCLUSION

For the foregoing reasons, Defendants J. Benjamin's "Emergency Motion to Dismiss" (Dkt. No. 491) and her request for discovery related to Grand Jury proceedings contained in that

---

[33] The Court also denies Defendants' alternative request for the suppression of "all evidence seized and retained by the Government" or an adoption of jury instructions "explaining the Government's actions" and the "evidentiary inferences the jurors should make" as a result thereof. (Dkt. No. 517 at 2). Having rejected Defendants' substantive arguments, and in view of the fact that the trial will be proceeding with a Superseding Indictment that cured the prior error and that is free of any taint, the Court finds no basis for these alternative forms of relief.

motion (Dkt. No. 491 at 7), Defendant Alexander's request for relief set forth in her "Supplemental Motion" (Dkt. No. 517), and Alexander's "Motion to Compel" (Dkt. No. 518) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: October 5, 2019                             _____/s/_____
                                                  WILMA A. LEWIS
                                                  Chief Judge